**JACKSON COUNTY, Missouri, Plaintiff-Respondent,**

v.

**Gene H. HESTERBERG et al., Defendants,**

**Carl T. Moore, Defendant-Appellant.**

**No. KCD 26136.**

Missouri Court of Appeals,
Kansas City District.

Feb. 3, 1975.

As Modified Feb. 26, 1975.

538

William K. Poindexter, William A. Collet, Kansas City, for defendant-appellant.

Harold L. Fridkin, County Counselor, Tom J. Helms, Asst. County Counselor, Kansas City, for plaintiff-respondent.

Before DIXON, Chief Judge and SHANGLER and WASSERSTROM, JJ.

In this condemnation proceeding, the defendant, Carl T. Moore, appeals from judgment entered on a jury verdict awarding $51,000 damages for his property taken by Jackson County, Missouri, under eminent domain for use as a park. The plaintiff county has not appealed. Defendant asserts that he was denied due process of law when the trial court did not allow defendant to discover or introduce evidence challenging plaintiff's right to condemn at the initial hearing on the plaintiff's petition. Defendant also asserts error in the denial of defendant's motion for new trial because the $51,000 jury verdict was not within the range of nor supported by any of the competent evidence adduced during trial. The plaintiff has also filed a motion to dismiss defendant's appeal, taken with the case and requiring initial consideration.

On May 10, 1972, the trial court entered the following order:

"Upon application of counsel for defendant Dr. Carl T. Moore . . . , the Clerk of this court is hereby ordered to pay and disperse [*sic*] out of the deposit made by plaintiff the following sum $35,392.70 *in full satisfaction of the judgment hereinbefore entered.*" (Emphasis added.)

Plaintiff's motion to dismiss was filed January 15, 1973. April 16, 1973, defend-ant landowner deposited in the registry of this court $54,392.70. This amount was equal to the $35,392.70 withdrawn May 10, 1973 and the $19,000 paid in to the circuit clerk pursuant to the award of the commissioners in this case.

Plaintiff's motion to dismiss urges that the withdrawal of the funds deposited after the jury verdict constitutes a satisfaction of the judgment and the appeal of defendant is moot.

 This contention requires first that the effect of the language of the court's order be considered. It would appear on the face of the order to be a satisfaction of the judgment. The order, however, cannot have that effect. It is settled that the satisfaction of judgments is circumscribed by rule and statute. Only by compliance with those rules and statutes can a judgment be satisfied. In short, they require release on the margin of the record by the judgment creditor which does not appear. Hardin v. Hardin and Central States Steel, Inc., 512 S.W.2d 851 (Mo. App.1974), so holds and explicates the various procedures to procure the release of a judgment, none of which were followed in this case. If the plaintiff county had, at the time of the court's order, felt that the judgment was satisfied and that it should be marginally released and defendant had failed to do so, the statute permits the circuit court, on application and notice, to order the clerk to enter the necessary marginal release. Section 511.620 RSMo 1969, V.A.M.S. Plaintiff county does not claim that there was accord and satisfaction or any intent on the part of the defendant to satisfy the judgment. Both parties concede that the payment by the county into the register of the court and the withdrawal by plaintiff are part of a practice to avoid imposition of interest.

The second issue to be met is whether this withdrawal by the defendant constitutes such a tender and acceptance of the sum due to estop the defendant from pursuing his appeal. The authority prof-

fered in support by plaintiff holds that one in whose favor a judgment is rendered cannot execute that judgment and still appeal from it. Noah v. German Ins. Co., 78 Mo.App. 370 (1899); Central Surety & Ins. Corp. v. New Amsterdam Casualty Co., 216 S.W.2d 527 (Mo.App.1948).

■ There can be no question as to the authority of these cases in ordinary litigation. Proceedings in condemnation, however, are based on constitutional right. Article I, Section 26, Constitution of Missouri, V.A.M.S. The Constitution and the statutes implementing it make condemnation proceedings *sui generis*, particularly in the area of the withdrawal of funds from the register of the court. Arkansas-Missouri Power Co. v. Hamlin, 288 S.W.2d 14 (Mo.App.1956). Chapter 523 RSMo 1969, V.A.M.S., governing these proceedings, clearly permits the withdrawal of the award of the commissioners. What is really in dispute here is the effect of the withdrawal of the difference between the award of the commissioners and the jury verdict plus the interest to the date upon which the amount was paid into court. This withdrawal was made after verdict and while the appeal was pending so that the entire issue relates to the post-verdict period.

A review of the case law and statutory provisions respecting interest and payment of the amounts due to owners in condemnation cases may serve to focus the legal issue presented by plaintiff county's contention.

Prior to the enactment of Section 523.-045 RSMo 1969, V.A.M.S., the issue of the payment of interest in condemnation cases was extensively litigated. Arkansas-Missouri Power Company v. Hamlin, supra, in an extensive review of the case law and reasoning of the courts in the area of interest on condemnation awards, held that the landowner was entitled to such interest. The court reasoned that interest in compensation cases is not interest *eo nomine*, but is a "means of measuring the value of the deprivation of the use of the property,

and because it is a part and element of the just compensation required by constitutional provisions, which are self-enforcing, entirely independent of statute; for when no other method is at hand to determine the landowner's loss for the interim period, its allowance as an element of the just compensation is held necessary to preserve the constitutionality of statutory procedures which do not of themselves provide a way for compensating the owner for the period he is kept out of owner's possession without full payment." Arkansas-Missouri Power Company v. Hamlin, supra, 1. c. 17.

Despite the landowner's apparent victory in persuading the court to hold that interest should be allowed, the court denied him recovery of the interest because of a failure to request from the trial court the imposition of the interest.

Thereafter, in State ex rel. Highway Commission v. Galloway, 292 S.W.2d 904 (Mo.App.1956), the Springfield Court of Appeals refused to permit interest to be assessed on a judgment which had become final by a separate motion to assess. Deeming the question to be of general interest, the case was transferred to the Supreme Court, and in an opinion, State ex rel. Highway Commission v. Galloway, 300 S.W.2d 480 (Mo.1957), the Supreme Court held that the method of assessment by separate motion was improper on the facts of the case, but affirmed the holding of the Hamlin case as to the right to interest.

Thereafter, the Supreme Court, in State ex rel. Highway Commission v. Green, 305 S.W.2d 688 (Mo.1957), specifically denied to the trial court power to add interest to a jury verdict and overruled *Hamlin* and *Galloway* to the extent they indicated such a power existed to add interest to a condemnation verdict. The *Green* court concluded that only by legislative enactment could the necessary power be vested in the trial court.

In St. Louis Housing Authority v. Magafas, 324 S.W.2d 697 (Mo.1959), the Supreme Court approved the payment of in-

terest against the specific contention that there was no statutory or constitutional authority supporting such a recovery. There was no procedural difficulty in that case since the claim for interest was presented before trial, and the case was tried to the court obviating the question of an additur to a jury verdict.

Following *Magafas*, the Supreme Court approved the imposition of interest by a jury from the date of taking to the date of jury verdict in City of St. Louis v. Vasquez, 341 S.W.2d 839 (Mo.1961).

This case law then established prior to the enactment of Section 523.045 RSMo 1969, V.A.M.S., (Senate Bill 248, Laws, 1959) a right to the payment of "interest" to an owner for the period of time when he was ousted from possession and title and had not received the compensation constitutionally required. Soon after the enactment of the statute, the issue arose as to the retroactive application of the statute and, in State ex rel. State Highway Comm'n v. Ellis, 382 S.W.2d 225 (Mo. App.1964), the claim that the statute was "substantive" and could not be applied retroactively was rejected on the ground that the right to interest existed prior to the enactment of the statute and that the statute merely eliminated the procedural difficulties relating to its imposition on the award.

■ The importance of the foregoing case law establishing the right to "interest," or as it is sometimes called, damages for delay in payment, to the instant issue lies in the reasoning of the courts. All of the case law proceeds on the assumption that as a matter of constitutional right, the defendant is entitled to payment upon the condemnor's right to possession and title and that, therefore, any delay in such payment likewise entitles him to the "interest." Thus, the plaintiff county's payment made to the Clerk of the court to avoid imposition of further "interest" cannot have that effect unless immediately available to the defendant landowner. To hold otherwise

would do violence to the reasoning and holdings of the cases set forth on the subject of interest.

The underlying argument of the plaintiff county that withdrawal of the amount paid into court is almost squarely answered by the court in Mayor, Councilmen, etc., of City of Liberty v. Boggess, 332 S.W.2d 305 (Mo.App.1960). There the City had condemned the land and an award of $48,270 had been made by the commissioners; the award was not paid, and no attempt was made to enforce it. Thereafter, in a jury trial of the exceptions of both parties, the verdict was $52,000. After verdict, the City deposited the amount of the verdict with the court. An appeal from the jury determination was taken by the landowner. The defendant landowner remained in possession and the City brought an injunction suit to bar interference with the City's right of possession and title. The trial court enjoined defendant, and he appealed. In affirming the trial court, the opinion in this court said, l. c. 307:

> "The amount of the jury award, $52,000, was deposited with the court for the benefit of defendant on June 10, 1958. On that date and continuously ever since defendant has had the right to withdraw this money."

The court then pointed out that the issue to be decided was the right of the City to possession and the court, referring to the applicable statute, said that upon payment of the damages, the City had the right to possession. In speaking to that statute, the court said, l. c. 309:

> "The clear intent of the Legislature seems to be that after condemnation of the property and after there has been a tentative fixing of the damages, the City, upon payment of such amount, shall be entitled to possession . . . . It does not follow that the City may not incur further liability . . ., when the City deposited $52,000 . . ., the condemnation case was pending in the Supreme Court on appeal. It was

impossible at that time to say with certainty that the judgment would not be sent back for new trial or for further proceedings. The City might contend that under these circumstances and in accordance with Section 88.063, supra, it was entitled to possession upon deposit of the amount of the commissioners' award. However, since a larger award had been made by a jury, we think the City wisely determined to deposit this greater amount. While the statute speaks only of advancing or paying the commissioners' award, we think it is the only reasonable interpretation to hold it is likewise applicable to the *jury award, certainly while that award or judgment is pending on appeal.*

. . . . . .

*This does not mean that the City, by such payment, thereby satisfied in full the judgment which has now become final,* nor does it mean that under like circumstances the City might not have become further liable in 'awarded damages' in the event defendant's appeal had been sustained and upon retrial a larger verdict secured." (Emphasis added.)

■ Following the reasoning of these cases, it must be held that the withdrawal by the landowner of a deposit made to stop interest is without prejudice to the right of appeal.

■ The condemning authority is not bound to pay even the commissioners' award if it does not seek immediate possession of the land. In State of Missouri, ex rel. State Highway Commission v. Paul, 368 S.W.2d 419, 422 (Mo. banc 1963):

"The condemnor is not required to take possession of the land before obtaining a final adjudication of the owner's damages. If it chooses not to take possession, the condemnor still has ten days to elect to abandon the condemnation after final assessment of damages has been made, either by subsequent commissioners or by a jury. . . .

The legal obligation of the condemnor to deposit in court the amount of the commissioners' award as a condition precedent to taking possession of the land is clear; it is independent of the statutory provisions for interest which were enacted in 1959."

and further at l. c. 424:

"The distinction which the plaintiff fails to recognize is that the condemnor is required by law to pay the money into court as 'the price' of divesting the owner immediately of his proprietary rights."

There is Missouri authority which, while not squarely in point, is analogous and persuasive. In City of St. Louis v. Gerhart Realty Co., 328 Mo. 103, 40 S.W.2d 661 (1931), the condemnor appealed from a verdict after both parties excepted to the commissioners' report. The condemnee moved to dismiss condemnor's appeal because the condemnor had paid that amount. The court overruled the motion to dismiss. The reasoning behind the court's ruling, in effect, was that because either party had a right to a jury trial upon the issue of damages after the compensation based upon the commissioners' report had been paid, they have a corresponding and continuing right to appeal from that trial even though the damages assessed by that jury were also paid and received. The court extended the rule that one may pay or receive the award based upon the commissioners' report and appeal to a jury on the issue of damages. It allowed a condemnor to appeal from a trial on the issue of the damages suffered by the condemnee after the condemnor paid the amount of damages assessed at the trial to the condemnee. The court said, l. c. 40 S.W.2d 663:

"It is the general rule in condemnation proceedings that payment into court of the amount of damages fixed by commissioners or the acceptance of the same by the property owner does not terminate the litigation, and either the condemnor or the landowner may proceed to trial and attempt to obtain a verdict for a dif-

ferent amount. St. Louis, Memphis & Southeastern Ry. Co. v. Aubuchon, 199 Mo. 352, 97 S.W. 867, 9 L.R.A.(N.S.) 426, 116 Am.St.Rep. 499, 8 Ann.Cas. 822; St. Louis & K. C. Ry. Co. v. Donovan, 149 Mo. 93, 50 S.W. 286; St. Louis, Keokuk & Northwestern R. Co. v. Clark, 119 Mo. 357, 24 S.W. 157; Rothan v. St. L., O. H. & C. Ry. Co., 113 Mo. 132, 20 S.W. 892; Nichols on Eminent Domain (2d Ed.) vol. 1, p. 643, § 213. The motion to dismiss the appeal is therefore overruled."

By the same reasoning, a condemnee has the right to appeal from the trial on the issue of the damage he has suffered after receiving from the plaintiff the full amount of damages assessed at that trial.

There is authority in other jurisdictions for the proposition that taking down of the amount awarded does not waive the right to an appeal. Maryland, facing the issue squarely presented when a check was tendered after a jury verdict, held that the landowner still had a right to appeal on the issue of damages. Shapiro v. Maryland-National Park and Planning Commission, 235 Md. 420, 201 A.2d 804 (1964). The Maryland court relied on and approved the reasoning of an early New York case, In re Courthouse in City of New York, 216 N.Y. 489, 111 N.E. 65 (1916). The New York court pointed out that title passed and that the case law permitted imposition of interest if the award was not paid (citing Missouri authority) and that even if the *amount* of the award were changed, the title to the land taken would remain in the condemning authority thus distinguishing the condemnation judgment from the ordinary judgment where a reversal nullifies the judgment. To the same effect are recent decisions in Nevada, State ex rel. Department of Highways v. 2nd Judicial District Court, 75 Nev. 200, 337 P.2d 274 (1959), and Arizona, State ex rel. Morrison v. Jay Six Cattle Co., 85 Ariz. 220, 335 P.2d 799 (1959).

It would be patently unfair to hold that the condemnee could not appeal from the judgment entered on the jury's verdict assessing his damages, as is his statutorily guaranteed right under § 512.020 RSMo 1969, V.A.M.S., because he has accepted the "just compensation" that it is his constitutionally guaranteed right to receive as condemnee under Article I, Section 26, of the Constitution of Missouri.

The motion to dismiss is overruled.

Upon the merits of the appeal, the defendant landowner first claims that the entire proceedings are void because the trial court denied the defendant landowner an opportunity to introduce evidence and testimony challenging the plaintiff county's purpose, authority, procedures and right to condemn. Plaintiff county counters this point by asserting that the defendant landowner is estopped to raise this question on appeal because the withdrawal by plaintiff of the funds paid by the county constitutes a waiver of all claims of irregularity in the prior proceedings. By reply brief, the defendant landowner has questioned that the record supports factually the withdrawal of the commissioners' award by the defendant. Dealing first with this latter claim and relying on the entire record, the following facts emerge.

At the hearing held on January 28, 1970, the trial court held that the plaintiff's petition to condemn showed a prima facie right to condemn. Within three days of the trial court's ruling upholding plaintiff's petition, the defendant successfully sought a provisional writ of prohibition in the Supreme Court of Missouri that temporarily precluded the trial court from taking any further action. On March 9, 1970, the Supreme Court of Missouri denied the petition for a permanent writ of prohibition. Pursuant to § 523.040 RSMo 1969, V.A.M.S., the trial court on March 11, 1970, appointed three commissioners to assess the damages that defendant would sustain by the condemnation. On August 3, 1970, the commissioners filed with the trial court their certified report that assessed defendant's damages at $19,000. Defendant filed with the trial court on August 10, 1970, a

motion for a temporary restraining order and other relief. The trial court overruled that motion on the day it was filed. Defendant then filed written exceptions to the report of the commissioners.

On August 26, 1970, plaintiff paid into the trial court for the use of defendant the $19,000 based on the commissioners' report. On August 27, 1970, the trial court entered an order confirming condemnation and vesting in the plaintiff the title to defendant's property.

It is clear from the record evidence that the defendant withdrew the $19,000 from the circuit clerk's office. Although there is no order from the trial court permitting the defendant to withdraw the money, substantial evidence indicates that he did make the withdrawal. Under the May 10, 1973, order from the trial court entered after the jury verdict of $51,000, the defendant was allowed to withdraw only $35,392.70 from the circuit clerk's office. On April 16, 1973, the defendant deposited in the register of the clerk of this court $54,392.70. The difference between what the record affirmatively shows that the defendant withdrew from the circuit clerk's office, $35,392.70, and what he tendered to the plaintiff, $54,392.70, is exactly $19,000. Certainly defendant would not have tendered to this court $19,000 more than he had actually received from the plaintiff. It is clear that the defendant withdrew from the circuit clerk's office the $19,000 paid into that office on August 26, 1970, for his use by the plaintiff.

Turning now to the effect of withdrawal of the award of the commissioners from the circuit clerk's office, the authority in Missouri seems settled.

In State ex rel. State Highway Commission v. Howald, 315 S.W.2d 786 (Mo.1958), the condemnee accepted the money that the condemnor paid into the court for his benefit pursuant to the commissioners' report. He duly filed exceptions to the commissioners' report, and the court held that the

"defendants are now estopped to question any matter except questions arising in the trial of the issue relating to the amount of damages." (l. c. 789)

An extensive resumé of the law and reasoning why a condemnee is estopped from questioning any issues other than damages if he files exceptions to the commissioners' report and then withdraws the award paid by the condemnor is developed in Chicago Great Western R. Co. v. Kemper, 256 Mo. 279, 166 S.W. 291 (1914). In that case, the condemnor paid the award based on the commissioners' report in to the court on November 17, 1910. The condemnee filed exceptions on November 18, 1910. The condemnee thereafter, but prior to the jury trial, withdrew the award from the court paid by the condemnor. In considering the effect condemnee's withdrawal of the award had on the proceedings, the court said, "By taking down the money he estops himself from questioning the regularity of the proceeding up to that point, although under the statute and our holdings he is permitted to further litigate the question of whether or not the allowance made by the commissioners is full and just compensation." (l. c. 294) The court concluded its discussion of the point by saying:

"The first judgment of the court in a condemnation proceeding goes to the very propriety of the condemnation itself. The second judgment goes to the damages to be paid. The parties interested can waive irregularities in such first judgment, and if they do so waive them by taking and receipting for the money paid into court for their benefit they are estopped from further questioning the regularity of that judgment of the court; the court being possessed of full jurisdiction at the time."

In Kansas City Southern Ry. Co. v. Second Street Improvement Co., 256 Mo. 386, 166 S.W. 296 (1914), the condemnee withdrew from the trial court the award of the

plaintiff based upon the commissioners' report. The court said (1. c. 298):

"In this situation the defendant (with plaintiff's cash in its coffers) cannot gainsay the right of plaintiff to condemn. It is estopped from questioning that portion of the condemnation proceeding."

The court went on to say:

"Under the facts and the law he is estopped from now urging that . . . the judgment of the circuit court, determining that plaintiff did have the right to condemn the property specified in its petition, is erroneous."

 Because the defendant in the instant case withdrew from the trial court the award based upon the commissioners' report that the plaintiff paid into the court on August 16, 1970, for his benefit, he is precluded and estopped from asserting on this appeal any irregularities in any proceeding that occurred prior to the time he made that withdrawal. All the cases and authority cited by defendant under point one of his brief support his assertion that whether a condemnor has a right to condemn a condemnee's land is a judicial question. None of them address the point that is procedurally dispositive of the question of the right of the defendant to challenge the right of the condemnor to condemn after the defendant has withdrawn the plaintiff's award based on the commissioners' report from the trial court. He may not make that challenge. Therefore, the defendant's assertion that the trial court erred during the hearing when it refused to give the defendant the opportunity to discover and introduce evidence challenging plaintiff's right to condemn is without merit.

The final and dispositive point on this appeal is defendant landowner's assertion of trial court error in overruling defendant's motion for a new trial because the verdict was not supported by any competent evidence offered by plaintiff, and the verdict was outside the range of the testimony of the witnesses.

Defendant's property is a 4.34 acre tract located near the Harry S. Truman Sports Complex in Jackson County, Missouri. It is also located near Leeds Road, which is a relatively major thoroughfare with easy, access to a nearby interstate highway.

Prior to the creation of the Sports Complex, the tract only had access to Leeds Road by way of a lesser street, Skiles Avenue. The parties stipulated that at the time of this taking of defendant's land by condemnor, the tract had 225 feet of frontage on Leeds Road. Both parties stipulated on this appeal that the trial court ruled that "the subject tract was entitled to any increment in value resulting from the relocation of Leeds Road inasmuch as the relocation (and resultant widening) was occasioned by the construction of the Sports Complex."

Despite this ruling of the trial court, it is apparent from the record that two of the plaintiff's expert witnesses did not, in their first estimate to the jury of the fair market value of defendant's land, consider that the property had 225 feet of frontage on Leeds Road. When both witnesses were asked what their estimates were of the value of defendant's land with frontage on Leeds Road, they changed their initial estimates.

Plaintiff's witness Russell, a qualified expert appraiser, estimated that the fair market value of defendant's land, without any frontage on Leeds Road, was $41,250. When asked what the fair market value of the tract would be with the frontage on Leeds Road, he said it would be $72,500 at a minimum.

Plaintiff's second expert witness, Vincent O'Flaherty, estimated the fair market value of the land, based on his study of nearby comparable sales, at $25,300. He admitted that this estimate was made without considering that the tract had any frontage on Leeds Road. He testified that the frontage on Leeds Road would make

the property more valuable than if it did not have that frontage. Plaintiff's counsel directly asked expert witness O'Flaherty by how much the stipulated frontage of the property on Leeds Road would increase its value. Witness O'Flaherty answered, "I can't tell you. I think the only way that that could be answered would be to get out and hunt down some sales of some properties where you have a similar situation and see what's happened. I just don't see how you could do it sitting here."

One of defendant's expert witnesses estimated the value of the property as $796,200, which was the highest estimate admitted into evidence.

The jury awarded defendant $51,000.

■ Plaintiff states in its brief that the county "does not dispute" the "principle of law that if the jury's verdict is not within the range of all the testimony lawfully admitted into evidence, then such verdict must necessarily be unlawful and subject to absolute reversal." Citing 5 Nichols on Eminent Domain, 3rd Edition, Section 17.3, p. 41, plaintiff asserts the following language shows there is an exception to the general rule.

". . . The award may not be in excess of the amount claimed by the owner, nor should it be less than the lowest estimate of value testified to by a witness. It has been held, however, that the awarding of such lesser sum, or other difference of opinion between the trier of the facts and the witnesses, does not necessarily dictate the setting aside of the award. This is especially true if there is other evidence upon which the award has been based."

Nichols, in the quotation above, relies on a single Massachusetts case to establish the exception, Loschi v. Massachusetts Port Authority, 282 N.E.2d 418 (Mass.1972).

A careful review of Loschi which did, in fact, approve a verdict higher than any "opinion evidence" shows that the reason-

ing of the Massachusetts case was based on a consideration of all the "evidence" and not merely the "opinions" of value. Thus, the case does not present an exception but a clarification of the rule that the jury's award must be within all the "evidence." Loschi and a prior Massachusetts case approving an award in an amount less than the lowest "opinion" evidence of value, Applestein v. Boston Redevelopment Authority, 269 N.E.2d 224 (Mass.1971), both indicate only the jury's verdict must be considered in the light of "all the evidence." In that jurisdiction and in those cases, the evidence before the jury included evidence of rental value and expenses on a capitalization method of value which the court held supported the verdict. Thus, from all the cases, the rule is not that the verdict be within the range of the "opinion" evidence alone when there is other evidence in the case; the rule is more properly stated that the verdict of the jury must be based upon all the evidence and a verdict without such support is not a proper verdict.

■ It is clear that Missouri adopts the rule that if a jury verdict in a condemnation case is within the range of the evidence, it will not be disturbed on appeal. Straughan v. Murphy, 484 S.W.2d 465 (Mo.1972). Likewise, a jury verdict that falls within the range of the evidence is supported by substantial evidence. State ex rel. State Highway Commission v. Twin Lakes Golf Club, Inc., 470 S.W.2d 313 (Mo.1971). As stated in Public Water Supply District No. 2 of Jackson County v. Alex Bascom Co., 370 S.W.2d 281, 290 (Mo.1963), "An appellate court will not ordinarily disturb a judgment for damages . . . where the amount awarded is supported by substantial evidence and is within the limits of the *proof.*" See also State ex rel. State Highway Commission v. Ellis, 382 S.W.2d 225 (Mo.App.1964).

As noted in Nichols, Section 17.3, pages 17–41, the majority rule in the United States is that the converse of this proposition is likewise true, that when a verdict is

not within the range of evidence, it is not supported by substantial evidence. Commonwealth v. Creason, 402 S.W.2d 426 (Ky.App.1966), a Kentucky case, concisely states the rule, "the verdict must be within the range of proof." Michigan, New York, Illinois and Texas cases cited in *Nichols* support the rule. The rule has been recognized in Missouri in City of St. Louis v. Smith, 325 Mo. 471, 30 S.W.2d 729, 731 (1930), which reverses an award of the commissioners when it was lower than the testimony of any of the witnesses testifying to value, and which was the only evidence before the commissioners.

Plaintiff relies on State ex rel. State Highway Commission v. Cady, 372 S.W.2d 639 (Mo.App.1963). In that case, the condemnee introduced no admissible evidence on the value of the damages he suffered by the condemnation. The court held that the jury could have properly awarded a verdict "under proper instruction, . . . within the reasonable limits of their own experience and observation in the common affairs of life." Plaintiff cites this case as authority that a jury may award damages that are outside the range of the evidence. It is to be noted there was no admissible evidence of any dollar value offered by defendant. As the court noted, the range would have included a verdict of "no damage" which the court indicated would have to be sustained. It should also be noted that the trial court had directed a verdict in favor of the plaintiff and then, on motion for new trial, reversed himself. The petition of plaintiff unequivocally pleaded the permanent taking of .52 of an acre of land of the defendant. The real thrust of *Cady* is that "taking" of property is some "evidence" of damage and that, absent proof of the amount of such damages, under "proper instruction," the jury could have found some damage, and the direction of the verdict for the condemning authority was improper. The holding cannot be tortured into a rule that a jury verdict in a condemnation case does not require evidentiary support.

*Cady* is an unusual case on its facts and it does no violence to the rule respecting the review of money judgments in condemnation cases, for there the court was not reviewing the adequacy or inadequacy of a verdict.

Recognizing that even in plaintiff's view of the "exception," that the Missouri law requires that there be substantial evidence to support the verdict, plaintiff argues that there is substantial evidence to support this verdict. This, because the jury also returned verdicts in the same trial on seven other pieces of property proximate to defendant's. Plaintiff claims that because the jury had the benefit of determining the value of those properties and hearing the testimony of other expert witnesses, they were "more than casually informed on the value of the eight lots comprising the subject matter of this condemnation."

The evidence of the value of the other lots was not specifically introduced for jury consideration during the trial as relating to the value of defendant's property. Any comparability to the defendant's property is not shown. The values which the jury awarded to the other properties were not proper for their consideration in determining the value of defendant's property. City of St. Louis v. Rossi, 55 S.W. 2d 946 (Mo.1932), holds that evidence of the award in a prior condemnation against the same owner on the same tract of land is not properly admissible upon a subsequent taking of more of the same owner's land.

The instant case is peculiar on its facts by reason of the unusual procedure of trying several defendants' exceptions to the same jury. A review of the evidence as to the other tracts shows that the estimates of value of the other tracts involved ran as low as $3,000 and the highest and best use of several of the tracts was residential, while a part of the Moore tract here in issue was reasonably expected to be commercial property. Because of these apparent differences in the various tracts being val-

ued, it is impossible to determine from the entire record what value the evidence as to these tracts would have in a factual determination of the value to be ascribed by the jury to the Moore tract. The Moore tract, because of its larger size and large frontage on relocated Leeds Road, was considered by all the witnesses to have differences in value in part and in total from all the other tracts in issue.

The plaintiff county does not directly argue that the testimony of the witness O'Flaherty provides evidentiary support for the verdict. As noted, this particular condemnation was for "park" purposes. It was not a part of the Sports Complex condemnation, nor that of the concurrent relocation of Leeds Road, and the parties are in agreement that the enhancement in value of defendant's property by reason of those improvements was to be considered in arriving at the before value of defendant's land. The witness O'Flaherty did not consider the defendant's property as having frontage on Leeds Road as relocated, a fact which he admitted would affect the value to be given to the land. He admitted that it would increase the value. The testimony of witness O'Flaherty as to a value based on a mistaken notion of the facts was without probative value. He said he could not make an estimate of value on the stipulated facts.

His testimony, in chief as to a value on an improper factual assumption, did not provide the jury with any additional substantive evidence from which they could arrive at a proper verdict. Greystone Heights Redevelopment Corp. v. Nicholas Inv. Co., 500 S.W.2d 292 (Mo.App. 1973). City of Liberty v. Boggess, 321 S. W.2d 677, 682 (Mo.1959). Shelby County R-IV School District v. Herman, 392 S. W.2d 609, 613 (Mo.1965).

There is authority directly analogous to these facts which denies probative value to O'Flaherty's testimony. In State ex rel. State Highway Commission v. Kendrick,

383 S.W.2d 740 (Mo.1964), the condemnation was of 11 acres, part of a total of 56 acres owned by the defendant. The 45 acres not involved in the highway condemnation was being condemned by the City of St. Louis for an airport, but had not been taken and appropriated at the time of the highway taking. The experts for the Highway Commission testified to values based on the assumption that the 11 acres would be isolated by the taking under the City condemnation. The Highway Commission appealed claiming the trial court did not take into consideration and give effect to the opinion evidence as to value of the Highway Commission's experts. The court pointed out the erroneous assumption of fact underlying the opinions and said, l. c. 744:

> "Clearly the court considered but for stated reasons *rejected* the value testimony given by the commission's witnesses. Under the evidence the court *not only had a right but also the duty so to do.*
>
> . . . . . .
>
> *Testimony giving a depressed or deflated value to the 11-acre tract* based upon the assumption that the taking of the abutting and contiguous 45-acre tract was either a *fait accompli* or in reasonable prospect, under which the commission's witnesses must have been laboring, would be without weight or value in determining the value of the 11-acre tract as it existed on November 26, 1956." (Emphasis added.)

Considering the peculiar facts in this case and the total departure of the plaintiff county's experts from the earlier and lower estimates based on an erroneous understanding of the configuration of the Moore tract at the time of taking, there is no evidence to support the jury's award in the case.

The cause must, therefore, be reversed and remanded for a new trial.

Adverting now to the deposit of funds in this court by the defendant landowner, the

voluntary deposit of the funds in this court requires that they be distributed in accordance with the holding in this case. The funds are to be disbursed, $19,000 to the defendant landowner Moore and the balance to the plaintiff county. To provide for an orderly record of these disbursements, they should be made in the Circuit Court.

The order reversing and remanding, therefore, requires that the Clerk of this court, upon rendition of the mandate herein, deliver to the Court Administrator of the Circuit Court of Jackson County the funds deposited in this court to be disbursed as herein indicated under the order of the Circuit Court.

SHANGLER and WASSERSTROM, JJ., concur.

TURNAGE, J., not participating because not a member of court when the cause was submitted.