**MID–CONTINENT NATIONAL BANK,**
**Plaintiff-Appellant,**

v.

**Dorland DeSHONG,**
**Defendant-Respondent.**

**No. KCD 27417.**

Missouri Court of Appeals,
Kansas City District.

July 6, 1976.

James E. Campbell, Tom J. Helms, Kansas City, for plaintiff-appellant.

Robert B. Randolph, St. Joseph, for defendant-respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

DIXON, Presiding Judge.

An appeal involving propriety of instructions in a suit on a note with a counterclaim by the maker that the holder of the note negligently failed to timely dispose of stocks held as collateral.

A jury verdict of $8,000 was returned in favor of the defendant on the counterclaim.

The following facts were stipulated, and the stipulation was read to the jury by the trial judge.

On January 20, 1969, defendant, Dorland DeShong, borrowed from plaintiff, Mid-Continent National Bank, the amount of $73,750.00 at 7¾% per annum. This loan was evidenced by a note and secured by 100 shares of stock in Rieke Corp. (Rieke), 100 shares of stock in Security Equity Fund, Inc., (SEF), and 40 shares of stock in Missouri Pacific Railroad (MoPac).

On March 3, 1969, three days before the note came due, defendant was placed in jail as a result of an incident which resulted in the death of his wife. Thereafter, defendant was confined in jail and two state hospitals. The date of his release does not appear in the record.

On March 6, 1969, the due date of said note, the principal and interest owing to plaintiff totaled $74,474.07. Thereafter, plaintiff liquidated the collateral and applied the proceeds to accrued interest and principal as follows:

3/14/69 and 3/25/69—100 shares Rieke and 100 shares SEF—net proceeds of $5,882.50.

5/15/69—stock split SEF—net proceeds of $1,452.51.

10/14/70—40 shares MoPac—net proceeds of $33,117.50.

12/30/69—a $200 dividend on the MoPac shares was received and applied.

Based upon these sales and receipts, the plaintiff bank stipulated principal and interest due at the time suit was filed totaled $42,811.08.

In March of 1969, the asking price for the MoPac shares was $2,000 per share and the bid price was $1,825 per share. In 1969, the high sales price was $1,950 per share and the low sales price was $1,220 per share. In 1970 the high sales price was $2,220 per share and the low sales price was $650 per share. These shares were sold in October of 1970 for $830 per share.

Based upon the stipulated facts, if the bank had sold this collateral in March of 1969, it could have realized between $73,000 and $80,000.

Plaintiff's pleaded theory of recovery was that the note balance plus accrued interest less credits for the sale of collateral was $42,811.08.

Defendant's pleaded affirmative defense was that plaintiff was negligent in not selling the collateral and that if it had been sold in March, 1969, the deficiency would not have occurred.

Thus, it was claimed a sale of the MoPac stock of $76,000 (approximately the average bid and asked prices in March) and the actual sales price of the other stocks, $7,379.51, would have resulted in a setoff of $83,379.51 against the March 6th balance of $74,474.07.

Based on the same claim of negligence, the counterclaim pleaded damages for the difference of $8,905.44.

Defendant's claim of negligence in both his affirmative defense and counterclaim are based upon evidence that plaintiff was directed to sell the MoPac shares in March, 1969, and at all times had the authority to do so under the loan agreement, and failed to do so without reasonable justification. A representative of defendant, his son-in-law, requested that plaintiff liquidate the MoPac shares in March of 1969. The testimony at trial is unclear as to a justification for failing to liquidate promptly.

Some effort was made to indicate that the plaintiff bank believed the defendant was "attached" to the MoPac shares and also it was in evidence that defendant had not communicated personally with the plaintiff bank. As plaintiff bank notes in its brief, the "live" evidence was very limited.

The plaintiff did not squarely controvert the claim of defendant that the son-in-law had notified the bank of defendant's desire that the collateral be sold. It is conceded that the bank had the right and the power to sell the collateral in default. The flavor of the bank's evidence on its failure to make a timely disposition of the collateral in the face of a falling market is shown by a short verbatim excerpt from the transcript of evidence being a portion of the testimony of one of the officers of the bank.

"Q Was it common practice back in 1969 at the Mid-Continent National Bank to check the market every day on all securities pledged as collateral?

A No, sir.

Q How often would that have been done?

A Well, back in 1969, as I recall, as the market pressures that were on at that time, we were probably checking every week or two, because the market looked rather dismal at that time.

Q You are not suggesting to this jury, are you, Mr. Kuklenski, that you were unaware of the fact that the Mo-Pac stock was declining in value?

A Definitely not.

Q You knew that?

A Certainly.

Q In spite of that, you did hang on to the stock?

A That is correct."

\* \* \* \* \* \*

"Q Isn't it a fact that you refused to sell Mo-Pac simply because you wanted the interest to run on the note? Is that what the discount committee decided?

A No, sir.

Q What had they decided?

A They decided not to sell the stock at that time.

Q Why?

A There were a lot of factors that entered into it.

Q What factors?

A For one thing, we had no contact with Dr. DeShong. We knew the circumstances, how the loan originated originally, what his feeling was toward the Mo-Pac stock, what he felt it would do in the future, and we took all those things in consideration.

Q That was your sole reason for refusing to sell Mo-Pac?

A That is right; it was the committee's decision.

Q You were on the committee?

A Yes."

One issue, raised in the argument needs resolution before dealing with the issue raised by plaintiff as to the instructions. During argument statements were made by counsel as to the verdict returned which indicated the verdict was returned upon the counterclaim alone. Upon questioning as to the judgment, the transcript was examined and found not to contain the judgment in violation of the mandatory provision of Rule 81.14(a). The judgment has been obtained, and it is a judgment against plaintiff on its suit and a judgment for defendant in the sum of $8,000. The jury verdict is as follows:

"We, the jury, find the issues in favor of the defendant and against the plaintiff and we assess defendant's damages at $8,000.00. Signed Thelma M. King, Foreman."

The forms of verdict given the jury permitted a verdict for plaintiff on the plaintiff's claim under the note, a verdict in favor of defendant on the counterclaim and a form which permitted a finding against *both* plaintiff and defendant. The jury was *not* given a form of verdict converse to a finding for plaintiff on its note theory, i. e., "If you find the issues against plaintiff, your verdict shall be in the following form, etc." Nor was such a converse offered with respect to the defendant's counterclaim. Thus, under the forms of verdict, the jury could find for plaintiff, for defendant or *against both.* No instruction or form of verdict was offered on the theory of setoff pleaded by defendant. Thus, to be initially determined is the validity of the judgment which the trial court entered. The verdict does not as noted contain a finding against plaintiff on the basic pleaded and submitted issue of a deficiency on the note. The issue, therefore, is the propriety of the trial court's construction of the verdict as im-

porting a finding against plaintiff and supporting the judgment entered.

In determining the import of the verdict to support the judgment, the pleadings, evidence and instructions are considered and an attempt made to determine the intent of the jury expressed in the verdict. *Chuning v. Calvert,* 452 S.W.2d 580 (Mo.App.1970).

So considered, the entire record in this case shows that the plaintiff sought to recover the amount of the note deficiency and defendant sought to recover damages for improperly delaying the sale of the collateral. Thus, on the theory of plaintiff's verdict-directing instruction which required an express finding of a sum being still due of $42,811.08, the jury could only have returned a verdict for plaintiff in the amount of $42,811.08. In the absence of a finding of negligence in failing to properly sell the collateral, the only verdict the jury could have returned under the *stipulated facts* and the instruction was one for $42,811.08.

On the other hand, the defendant's verdict-directing instruction on the counterclaim would have permitted the jury to find that the sale of the collateral at its best price after default would have brought a high of $87,397 and a low of $80,399 and that after deducting the amount admittedly then due of $74,474.07 would have required the jury to find for the defendant in the range of $5,925 to $12,905 as they might find on the issue of value. The jury, of course, was entitled to find a verdict within the range of the values stipulated. *DaArmon v. St. Louis,* 525 S.W.2d 795 (Mo.App. 1975); *Jackson County v. Hesterberg,* 519 S.W.2d 537 (Mo.App.1975). Provided, of course, that they had found negligence.

Obviously, the verdicts authorized by the two verdict-directing instructions would be inconsistent if both had been returned. In those circumstances, the inference to be drawn on the jury verdict is that the jury resolved the other issue in the case and found against the plaintiff. *Downing v. Dixon,* 313 S.W.2d 644, 652 (Mo.1958).

No doubt can exist that the jury verdict was induced by the failure to submit forms of verdict permitting the disposition of all

of the issues. Further, the forms of verdict are not referenced to the verdict-directing instruction by number, and the jury may well have felt that the language in the form of verdict used by them embraced a finding against plaintiff on its claim.

Plaintiff bank on this appeal raises only questions relating to two instructions, the burden of proof instruction and the defendant's so-called converse instruction.

As to the converse instruction, the plaintiff bank urges that it was erroneous because (1) it does not converse any element of plaintiff's submission; (2) it is an affirmative defense instruction in improper form; and (3) that the incorporation by reference of the defendant's counterclaim instruction as defining the negligence which would defeat plaintiff's recovery in effect required the jury to find for defendant on the counterclaim in order to defeat plaintiff's claim.

Defendant counters by asserting that if the "converse" is error, it was invited by the failure of the plaintiff to add a "tail" to the principal instruction on the note referring to the affirmative defense which defendant claims was embodied in the converse.

There can be no question the instructions in this case are erroneous both in commission and omission. Plaintiff asserts and defendant does not controvert the principle that error in instruction traceable to a violation of the principles of MAI constitutes error which is presumed to be prejudicial and the burden is on the party seeking to uphold the verdict to demonstrate nonprejudice, the question of prejudice to be judicially determined. *Brown v. St. Louis Public Service Co.,* 421 S.W.2d 255 (Mo. banc 1967); *Nu-Way Services, Inc. v. Mercantile Trust Company,* 530 S.W.2d 743 (Mo. App.1975).

Defendant argues strenuously that the error, if any, was not prejudicial and that considering all the instructions together and the evidence, the verdict is for the right party and should be affirmed in accordance with the principle that a judgment should not be reversed except for error "which materially affects the merits of the action." Rule 84.13(b).

The crux of plaintiff's argument that the instructional error was prejudicial is its insistence that the improper "converse" required the jury to find for defendant on the counterclaim in order to find for defendant on the affirmative defense issue. This because the "converse" incorporated by reference the element of negligence contained in the verdict-directing instruction on the counterclaim.

Thus, plaintiff argues it was deprived of a "dogfall" because the jury could have been misled into believing they had to return a verdict on the counterclaim before they could find against plaintiff on the principal suit on the note.

The difficulty with the argument is that a "dogfall" was not possible under the stipulated and admitted facts and the instructions given.

Only two issues were for the determination of the jury under the evidence and the instructions—"negligence" and "value." If the jury found against defendant on negligence, the verdict of necessity would have to be for the plaintiff on the deficiency since the fact of such a deficiency was stipulated.

As to value, if the jury found no negligence, value was immaterial. If they found negligence, it was for them to say what the value of the MoPac stock was when it should have been sold. The stipulation as to range of value at any date other than the month of March, 1969, is so skimpy that no evidence upon which to base a finding of value for any specific period or point in time other than the month of March exists in this record. The stipulation was that the high sales price for 1969 was $1,950 per share, and the low sales price was $1,220 per share. So far as the stipulation went, the low in price of MoPac stock could have occurred prior to default. The high sales price or the low sales price of stock may occur only once a year or at various times during a year. There was simply no evidence that would have permitted the jury to find that the value of the collateral just

equalled the amount due on the note at a specific time and thus permit the jury to find against both parties. This because the only evidence as to value of the stock at any time other than March of 1969 was entirely unrelated to any specific period of less than a year. It would have been pure speculation for the jury to have concluded upon the basis of this evidence that a sale at any other time than in March of 1969 would have exactly equalled the amount due. The whole thrust of defendant's theory was that plaintiff was negligent in not disposing of the collateral in March of 1969. The jury, with commendable common sense despite the confusion engendered by the evidence of value and the instructions, found a proper verdict.

The instant case is analogous to *Commercial National Bank of Kansas City, Kansas v. White*, 254 S.W.2d 605 (Mo.1953). In that case, defendant made the same substantive complaint that plaintiff makes here, that the instructions did not permit a "dogfall." In ruling this contention adversely, the court said (l.c. 608):

"Either plaintiff was entitled to a verdict for the undisputed balance on the note or defendant was entitled to have refunded the payments credited on the purported indebtedness evidenced by the note. Both parties could not win; neither could both parties lose. Clearly, a finding for one would necessarily include a finding against the other. It all depended on whether defendant paid $1,200 or $12,000 for the cashier's check dated December 31, 1946. A verdict against plaintiff on its petition and against defendant on his counterclaim was not authorized under the law as applied to the facts of the case."

■ As to plaintiff's complaint on the burden of proof instruction, plaintiff urges it is erroneous by reason of a reference to the counterclaim instruction by number instead of the form suggested in MAI 3.01 notes on use which counsels the insertion of the number of the affirmative defense instruction. The instruction correctly states the law applicable to the respective burdens of proof of the parties, despite the deviation from MAI, and in view of the fact that the only real issues for determination of the jury, to-wit: negligence and value, were required findings in the numbered instruction referred to the error could not have been prejudicial.

In this case, despite the erroneous instructions, the jury rendered a proper verdict within the evidence, and it should be and is affirmed.

All concur.