SHAPIRO, ET AL. *v.* MARYLAND-NATIONAL CAPI-TAL PARK AND PLANNING COMMISSION

[No. 410, September Term, 1963.]

422

*Decided July 2, 1964.*

*Motion for rehearing and for stay of proceedings filed July 31, 1964, denied September 15, 1964.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Leonard S. Melrod,* with whom were *Joseph V. Gartlan, Jr.,* and *Alfred Burka* on the brief, for the appellants.

*B. Houston McCeney* for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The Maryland-National Capital Park and Planning Commission, a municipal corporation, condemned some two hundred fifty-eight acres of a tract of approximately four hundred twelve acres (described by the experts as being heavily wooded, with rough and difficult terrain, which was zoned as rural residential) on the edge of Rockville in Montgomery County to use as a site for a dam to aid in conservation, to prevent erosion and siltation, and to provide a recreational area, all as part of the park system.

At the trial the only contested issue was the fair market value of the land being taken. Two experts who testified for the Commission felt that the highest and best use of all the land

was for park and recreational purposes. One estimated the value of the two hundred fifty-eight acres at $516,800, the other at $543,000. The one expert who testified for the property owners, the appellants, was of the view that the highest and best use of some three hundred sixty acres of the whole tract was for residential development, despite its rugged hilly character and that of the approximately fifty-three acres remaining was for park use. He put a value on the land being taken of $1,070,000.

The only real difference between the experts was whether all the land taken was best suited for park purposes or whether but a small part was. The jury, after its view of the land, evidently accepted the opinions of the experts who testified for the Commission for it brought in a verdict for the precise value of $543,000 set by one of those experts on the land taken.

Almost immediately after the trial, the Commission's lawyer sent a check for the amount of the jury's award to the order of the attorney for the property owners. The lawyer endorsed it as payee and delivered it to his clients, who deposited it to their account after writing on its back, under the lawyer's endorsement and over their signatures: "This check is accepted without prejudice to the right * * * [of appellants] to appeal from the award by the Circuit Court of Montgomery County." The appellants say the check was accepted as an accommodation to the Commission to toll interest while the appeal was pending, after the clerk of the court refused to accept the check unless ordered to do so by the court. The Commission disputed this and moved to dismiss the appeal on the ground that an appellant cannot take the inconsistent position of accepting the benefits of a judgment and then challenge its validity on appeal. This is the general rule. *Stewart v. McCaddin,* 107 Md. 314, 319; *Bethlehem Steel Co. v. Mayo,* 168 Md. 411, 413; 30 C. J. S. *Eminent Domain* Sec. 345, p. 23; 4 Am. Jur. 2d *Appeal and Error* Sec. 258; Annotation, 169 A. L. R. 985. There is an exception to this rule "where the right to the benefit received is conceded by the opposite party, or where the appellant would be entitled thereto in any event." *Bethlehem Steel Co. v. Mayo,* just cited, at p. 413 of 168 Md. (a compensation case). See also *Lewis v. Lewis,* 219 Md. 313 (alimony); *Petillo v. Stein,* 184 Md. 645 (workmen's compensation).

Although the general rule usually has been applied in condemnation appeals, the rationale of the exception to the rule (which this Court has recognized in compensation and divorce cases) has been accepted by strong courts where the only issue was the amount of the award. The Court of Appeals of New York, in a discriminating analysis of the opinions, held in the case of *In Re Courthouse in City of New York*, 111 N. E. 65, that where appeal of the condemnee does not raise any question of the right to condemn or the right of the condemnor to retain the land condemned or any other question except the fairness or correctness of the amount of the award, which an appellant accepted (but not as payment in full), the appeal will be entertained. See also *Chicago Great Western R. Co. v. Kempler* (Mo.), 166 S. W. 291, 293-294; *Low v. Concord RR* (N. H.), 3 A. 739, 742.

In the appeal before us the property owners do not challenge the right of the Commission to condemn or raise any other question except the size of the jury's award. The Commission concedes the right of the appellants to the award and the appellants did not take payment of the award in full satisfaction of the jury's inquisition. We accept the reasoning and the conclusion of the Court of Appeals of New York in the *In Re Courthouse* case as sound and deny the motion to dismiss the appeal.

On the merits, the appellants raise the contentions that the trial court: (1) improperly suggested to the jury that the condemned land was not suitable for residential development; (2) refused to allow one of the appellants to testify that he had applied for rezoning of the property to a residential classification four years before the condemnation; (3) allowed the Commission's lawyer to argue to the jury that any award would be paid with tax receipts.

In the course of a colloquy with counsel while one of the Commission's real estate experts was being cross-examined as to whether his usual practice in appraising land, on which residential development is presently contemplated, was to employ an engineer to assist him (preparatory, undoubtedly, to asking whether he had done so in this appraisal), Judge Shure said that the property being taken "is not subdivision property."

Counsel for the appellants did not then object, but sometime later moved for a mistrial because of the remark. Judge Shure, in denying the motion, made clear that he meant no more than that the property was not presently subdivided or ready for subdivision—not that it could not be subdivided—and that this was the meaning of what he said must have been apparent to everyone in the courtroom. The jury had viewed the land, and the lawyers and the witnesses frequently referred to it as "raw acreage," and the accepted contested issue was whether its best potential use was for park purposes or for future residential development. The charge to the jury included this:

> "You must exclude from your deliberations the use to which this land is to be put. * * * The test is what is the highest and best use for the property as of this date, which is the date of taking. Consideration must be given to any use at this time to which the land is adapted and for which it is immediately available."

Any possible misinterpretation by the jury as to what the court meant by the remark complained of was eliminated by the court's instructions to the jury.

We find no error in the rejection of proffered testimony that the appellants had applied four years ago for rezoning of the property from rural residential to R-90 (one-family detached restricted residential), but had withdrawn the application without prejudice when told by the director of parks that the land would be condemned. The basis of the court's rejection was that appellants had not been compelled legally to withdraw their application but made a business choice and because such an election made four years ago was too remote and speculative to help the jury in determining present day values and would tend only to confuse the pertinent issues. Judge Shure advised the appellants that any evidence as to a probable change in zoning classification in the reasonably near future would be received, but not what happened four years ago. The ruling was reasonable.

Appellants contend that it was prejudicial error to allow the Commission's lawyer, in his argument to the jury, to argue that any award by the jury would be paid out of tax money

and to deny a motion for a mistrial after the argument had been made. The record suggests that appellants' lawyer anticipated, rather than actually heard, the reference complained of and that he interrupted the argument to suggest to the court that "to tell these folks, which they probably know, that this is tax money, is error."

The Commission's lawyer told us at the bar that the fears of his opposing brother had in fact been anticipatory and the objection as to the references was made out of the presence of the jury. Appellants countered by telling us that the argument actually had been made to the jury and offered as a supplement to the record the Commission's answer to appellants' motion for a new trial in which, appellants say, the Commission conceded that the argument had in fact been made.

We see no reason for supplementing the record, for if we assume that the appellants are correct in their contention that the argument was made, we think a reversal is not called for under the circumstances.

This is not to condone as proper generally an argument to the jury in a condemnation case that tax money will pay the award, for the source of funds which will pay for the land taken is not material or an issue in these cases. If such an argument is begun, it should be stopped and the jury told to disregard it in their deliberations. This has been pointed out by other courts. See *Robards v. State* (Tex. Civ. App.), 285 S. W. 2d 247, 249. In some cases the appellate court has reversed when such an argument was made below. *Doty v. City of Jacksonville* (Fla.), 142 So. 599; *Denver Joint Stock Land Bank v. Board of Co. Com'rs* (Colo.), 98 P. 2d 283. When this has been done, the emphasis had been blatantly and strongly put by the argument below on the fact that the award would be paid from the pocketbooks of the jury.

In our case the appellants had shown in cross-examination of the director of parks that the public body which was condemning the land had a twenty-year program of acquisition of lands, that it attempted to purchase land within a budget limit and, if unsuccessful, must pay condemnation awards within limits. The effect was to convey to the jury the idea that the appraisals of the Commission's experts would be low so as to

keep within the public funds available to the Commission for the acquisition of land. Also, as appellants' counsel conceded in his objection to the argument complained of, the jury were being told by the Commission's lawyer only what "they probably know."

After the motion for a mistrial had been denied because the court found that "nothing that was said is harmful," counsel for appellants said "this tax money under the Capper-Crampton Act is either all Federal or almost all of it is Federal in our county." [1]

Judge Shure then said to appellants that after the Commission's lawyer "finishes his argument you may answer that in any way that you feel is proper." Appellants' lawyer replied to the court: "Thank you. Thank you very much," and, apparently, accepted the permission to argue the point (including the generally accepted—if not well founded—notion that since Federal funds and not local tax receipts would pay for the award, no juror need feel he individually was concerned) as a satisfactory solution of the dilemma posed to appellants by the Commission's argument as to tax funds.

We think, for the reasons we have recited, that no significant prejudice, if any at all there was, resulted from the hassle about tax funds paying the jury's award. "The modern tendency to restrict the setting aside of verdicts for errors which do not cause substantial injustice is especially noticeable in land damage cases." 1 Nichols, *Eminent Domain* (3rd Ed.), Sec. 4.106, pp. 364-365 (the learned author says also in Vol. 6, Sec. 26.731, p. 270, that "inconsequential errors which can have no substantial effect upon the rights of the parties are ignored on

---

1. The Capper-Crampton Act is an Act of the Congress of the United States entitled "An Act for the acquisition, establishment and development of The George Washington Memorial Parkway along the Potomac from Mount Vernon and Fort Washington to the Great Falls, and to provide for the acquisition of lands in the District of Columbia and the States of Maryland and Virginia requisite to the comprehensive park, parkway and playground system of the National Capital." 46 Stat., Part 1, 482 (1930). Sec. 23 of Ch. 780 of the Laws of Maryland of 1959 authorizes the Commission to secure and use Capper-Crampton funds.

appeal"). See, for similar reasoning in condemnation cases, *Hance v. State Roads Comm.*, 221 Md. 164, and *Bergeman v. State Roads Comm.*, 218 Md. 137.

*Judgment affirmed, with costs.*