806 A.2d 314

Mary Jo BOYD

v.

Perry G. BOWEN, Personal Representative
of the Estate of Marion E. Cole.

No. 859, Sept. Term, 2001.

Court of Special Appeals of Maryland.

Aug. 30, 2002.

636

640

Jonathan S. Shurberg, Silver Springs, for appellant.

No brief or appearance by appellee's counsel.

Argued before HOLLANDER, DEBORAH S. EYLER, JAMES S. GETTY (Ret'd, Specially Assigned), JJ.

DEBORAH S. EYLER, Judge.

Mary Jo Boyd, the appellant, made a claim against the Estate of Marion E. Cole ("the Estate") for monies she paid on Mrs. Cole's behalf, during Mrs. Cole's lifetime. Perry G. Bowen, Jr., Personal Representative of the Estate, the appellee, denied all but a small portion of the claim.

The appellant petitioned the Orphans' Court for Calvert County for payment of the disallowed claim. The orphans' court held a hearing and granted the claim. On behalf of the Estate, the appellee filed an action for a *de novo* appeal in the Circuit Court for Calvert County. The court held an evidentiary hearing, and at the close of the appellant's case granted the appellee's motion for judgment.

On appeal, the appellant presents six questions for review. We have combined, reworded, and reformulated the questions as follows:

I. Did the trial court err by not applying an evidentiary presumption that the decedent had agreed to repay the appellant?

II. Did the trial court err in: 1) allowing the appellee to assert the affirmative defenses of *res judicata* and collateral estoppel at trial, when they were not pleaded; 2) ruling that under the doctrine of collateral estoppel, the issue of incompetence of the decedent had been conclusively decided in a prior proceeding between the parties or their privies; and 3) ruling that the appellant's claim was barred by the doctrine of res judicata?

III. Did the trial court err in ruling that certain checks written by the appellant were inadmissible evidence?

IV. Did the trial court err in declining to rule that the appellee had waived by his conduct the Estate's right to appeal the orphans' court's order?

V. Did the trial court err in: 1) considering the defense of limitations; and 2) ruling that the appellant's claim was time-barred?

For the following reasons, we answer "no" to questions I, III, and IV, and "yes" to questions II and V. Accordingly, we shall vacate the judgment of the circuit court and remand the case to that court for further proceedings.

## FACTS AND PROCEEDINGS

The appellant and Marion E. Cole met in 1980 and became close friends. Both women lived in Calvert County. Although the record does not reveal Mrs. Cole's age, there is reference to her being elderly. Mrs. Cole was a widow, and apparently did not have any children. She had several nieces and nephews, including Gilbert A. Cole, Jr., who lives in Silver Spring, Maryland.

On May 17, 1990, Mrs. Cole executed a Power of Attorney naming the appellee as her attorney-in-fact. About a month later, on June 12, 1990, she executed her Last Will and Testament ("Will"). The appellee was named Personal Representative in Mrs. Cole's Will. The Will named several legatees, including the appellant, who was bequeathed $10,000.

On July 20, 1994, Mrs. Cole executed a codicil to her Will, adding a bequest that is not relevant to this case.

On January 3, 1996, the appellant drove Mrs. Cole to the Rockville law office of Lawrence A. Arch, Esquire. The purpose of the visit was for Mrs. Cole to retain Mr. Arch to draft a new will and power of attorney revoking her 1990 Will and Power of Attorney.

At the January 3, 1996 meeting with Mr. Arch, the appellant wrote Mr. Arch a check in the amount of $1,000, in payment of Mr. Arch's retainer fee, on behalf of Mrs. Cole.

Anticipating that Mrs. Cole's competency to execute a new Will and Power of Attorney would be questioned, Mr. Arch arranged for Richard Epstein, M.D., a psychiatrist, to perform a competency examination. On January 29, 1996, the appellant wrote Dr. Epstein a check for $3,250, for his fee for Mrs. Cole's competency examination.

On February 19, 1996, Mrs. Cole executed a new Power of Attorney naming the appellant as her attorney-in-fact. The same day, she executed a new Will naming the appellant as her Personal Representative. In the new Will, Mrs. Cole included the $10,000 bequest to the appellant that had existed in the 1990 Will, and also bequeathed her 20% of the residuary estate.

Also on February 19, 1996, the appellant wrote two more checks to Mr. Arch, for $1,552 and for $500, in payment of Mr. Arch's services on behalf of Mrs. Cole, and at Mr. Arch's request, the appellant and Mrs. Cole signed a one-page retainer agreement stating, *inter alia,* that even though the appellant had paid Mr. Arch's fee, he was representing Mrs. Cole, not the appellant. The retainer agreement further stated: "You [meaning the appellant] have written checks for my [Mr. Arch's] fees, subject to reimbursement at a later date from Marion E. Cole."

Around the same time, the appellant wrote two other checks for much smaller sums, to Parcel Plus and to another business, also in connection with Mr. Arch's representation of Mrs. Cole.

Soon thereafter, the appellee filed a declaratory judgment action ("the competency case"), in the Circuit Court for Calvert County, asking the court to determine whether Mrs. Cole had been mentally competent to execute her new Power of Attorney and Will (and thereby to revoke her 1990 Power of Attorney and Will). Mr. Arch, on behalf of Mrs. Cole, defended the case, asserting that Mrs. Cole had been competent at the relevant time. In addition, Mr. Arch asked the court to direct the payment of his attorney's fee out of Mrs. Cole's assets.

On March 8, 1996, the judge assigned to the competency case had "direct contact" with Mrs. Cole, to evaluate her condition. Thereafter, the court held an evidentiary hearing.

On June 13, 1996, the court in the competency case issued a declaratory judgment stating, *inter alia*, that on January 3, 1996, and February 19, 1996, Mrs. Cole had "lacked sufficient mental capacity to execute legal documents, to manage her affairs and property effectively, or to make reasoned decisions with respect thereto." The court found that Mrs. Cole had not had sufficient mental capacity, either on January 3, or February 19, 1996, to revoke her 1990 Power of Attorney and 1990 Will, and that the 1990 instruments therefore remained valid and in effect.

The court in the competency case further found Mrs. Cole to be a disabled person in need of a guardian of her property, under Md.Code (1991 Repl.Vol., 1996 Supp.), section 13–101 of the Estates and Trusts Article ("ET"). It appointed Gilbert A. Cole, Jr., to act in that capacity, and directed Mr. Cole to pay certain specific expenses from Mrs. Cole's guardianship estate. The court denied Mr. Arch's request for payment of his attorney's fee from the guardianship estate. Apparently, no appeal was taken.

Slightly more than three years later, on July 21, 1999, Mrs. Cole died. In accordance with the directive in her 1990 Will, the appellee was named Personal Representative of Mrs. Cole's estate.

On September 28, 1999, the appellant made a claim against the Estate for $6,770.99, which she alleged was the total amount paid by her on Mrs. Cole's behalf for attorney's fees for Mr. Arch, for Dr. Epstein's fee for his competency examination, and for other bills she (the appellant) had paid for Mrs. Cole's benefit, from January 3, 1996, to April 1996.

On February 4, 2000, the appellee denied the appellant's claim, except for $61.75.

On March 31, 2000, the appellant filed a Petition for Payment of Disallowed Claim, in the Orphans' Court for Calvert

County. That court held a hearing on her claim, on June 20, 2000. A few weeks later, on July 11, 2000, the orphans' court granted the claim, in the amount of $6,700.

The appellee, as Personal Representative of the Estate, noted an appeal to the Circuit Court for Calvert County. On May 21, 2001, the court held a *de novo* evidentiary hearing. The presiding judge was the same judge who had presided over the competency case, in 1996.

The appellant testified on her own behalf and called Mr. Arch as a witness. The appellant stated that when she made the payments to Mr. Arch, Dr. Epstein, and otherwise on behalf of Mrs. Cole, she did so with the expectation that she would be reimbursed by Mrs. Cole. She did not receive reimbursement, however.

The evidence adduced by the appellant is as we have recited. At the close of the appellant's case, the appellee moved for judgment. After hearing lengthy argument of counsel, the court granted the motion. Four days later, the court issued a written memorandum opinion and order explaining its findings and legal analysis.

The court made its ruling on some interrelated grounds, and on some alternative grounds. It ruled that the evidence presented by the appellant did not show by a preponderance of the evidence that Mrs. Cole had agreed to repay the appellant the sums the appellant had paid to Mr. Arch and Dr. Epstein.[1] The court rejected the appellant's argument that as a non-family member of Mrs. Cole, she was entitled to an evidentiary presumption that she made the payments to Mr. Arch and Dr. Epstein upon an agreement by Mrs. Cole to reimburse her. The court pointed out that the presumption that family members render services to a decedent *gratis*, which is recognized in the law, applies to the rendering of services, not to the advancing of funds, and the appellant did

---

1. While in the circuit court proceeding, the appellant did not abandon her claim for the remaining expenses—the Parcel Plus bill and other bills she allegedly paid on behalf of Mrs. Cole—she focused her attention on the sums she had paid to Mr. Arch and Dr. Epstein.

not present any evidence that she had rendered services to Mrs. Cole.

The court further explained that, contrary to the appellant's argument, it does not follow from the recognized presumption, stated above, that there also is a presumption that non-family members who render services for a decedent are presumed do so with the understanding that they will be paid for their services. Thus, even if the recognized presumption were extended from services to advancements, that would not support the appellant's position that she was entitled to an evidentiary presumption that Mrs. Cole had agreed to repay her.

The court went on to rule that even if the evidentiary presumption the appellant was advocating existed, it was rebutted by the court's determination, in the 1996 competency case, that Mrs. Cole was mentally incompetent on January 3, and February 19, 1996, when the appellant wrote the checks to Mr. Arch and Dr. Epstein, and when the appellant and Mrs. Cole signed Mr. Arch's retainer agreement. The court stated:

> The law ... provides protection for the incompetent and does not permit those found to be incompetent to bind themselves into a contractual arrangement for money. It is irrelevant whether at the time of the agreement, [the appellant] was aware of Ms. Cole's incompetency. Ms. Cole and [the appellant] had been friends for over sixteen years. The [c]ourt is confident that anyone who spent any amount of time with Ms. Cole, as [the appellant] testified she had, would recognize that Ms. Cole lacked the mental capacity to care for her personal and financial matters. Regardless, if any agreement of repayment existed, it was void because of the court's ruling in [the competency case], finding Ms. Cole to be incompetent at the time of this transaction.

The court also ruled, alternatively, that the appellant's claim against the Estate was barred by the doctrine of *res judicata*, at least insofar as the claim for reimbursement of the fees paid

by the appellant to Mr. Arch was concerned.[2] The court found that when Mr. Arch sought payment of his attorney's fees, in the competency case, the appellant was on notice of the claim, and was in privity with Mr. Arch. The court in the competency case had denied Mr. Arch's claim for fees because it had found Mrs. Cole not to have been competent to enter into a contract to pay legal fees. The court in this case ruled that the judgment in the competency case was a bar to the appellant pursuing a claim against Mrs. Cole's Estate for reimbursement of the attorney's fees the appellant had paid to Mr. Arch.

Finally, the court ruled, also as an alternative ground, that the appellant's claim was barred by the three-year statute of limitations for breach of contract actions. The court reasoned that even if Mrs. Cole had agreed to repay the appellant, and had been competent to enter into such an agreement, the promise to repay was made in early 1996, when the payments to Mr. Arch and Dr. Epstein were made. The appellant had three years from then to file suit against Mrs. Cole, or her guardianship estate. She failed to do so. By the time the appellant made her claim against Mrs. Cole's Estate, in September 1999, it was time-barred.

From the judgment entered by the circuit court, the appellant noted a timely appeal to this Court.

We will recount additional facts as necessary to our discussion of the issues.

## DISCUSSION

### I.

■ When a defendant moves for judgment at the close of the evidence presented by the plaintiff in an action tried by the court, the court may proceed, as the trier of fact, to determine the facts and render judgment against the plaintiff.

---

**2.** The section of the court's ruling on this point was entitled "collateral estoppel," but addressed the doctrine of *res judicata*.

Md. Rule 2–519(b). In that circumstance, unlike in a jury trial, the trial court is *not* compelled to view the evidence in the light most favorable to the plaintiff. *Pahanish v. Western Trails, Inc.*, 69 Md.App. 342, 353, 517 A.2d 1122 (1986).

On appeal, we review the trial court's decision to grant a defendant's motion for judgment at the close of the plaintiff's case in a court trial under Md. Rule 8–131(c):

> When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

The appellant contends that the trial court erred in finding the evidence insufficient to support a finding that Mrs. Cole agreed to repay her, because the court failed to apply and weigh as an item of evidence a presumption that "the rendering of services or the advancement of money by a non-family member is to be repaid." The appellant maintains that the court's failure to apply this evidentiary presumption ran contrary to "[a] line of case law from the Court of Appeals going back over a hundred years. . . ."

The cases the appellant cites do not support her argument that she was entitled to the evidentiary presumption she describes. The appellant quotes the following passage from *Bantz v. Bantz*, 52 Md. 686 (1880):

> In order to justify a claim for services being allowed against a decedent, there must have been a design, at the time of the rendition, to charge, and an expectation *on the part of the recipient* to pay for the services. *The services must have been of such character, and rendered under such circumstances, as to fairly imply an understanding of payment, and a promise to pay. There must have been an express, or implied understanding between the parties that a charge for the services was to be made, and to be met by payment.*

*Id.* at 693 (emphasis added). The appellant also quotes a *proviso* to that rule, as stated in *Bixler v. Sellman,* 77 Md. 494, 496, 27 A. 137 (1893), that while the law generally will imply a promise to pay for services rendered to and accepted by the decedent during his or her lifetime, "a well recognized distinction exists where the service is rendered by a member of the family of the person served. In the latter case a presumption of law arises that such services are gratuitous."

■ These cases, read together, establish that a claim for payment of services rendered to a decedent can be based on evidence of an express contract to pay for the services or on evidence of an implied-in-fact contract to do so; but when the services were rendered by a family member, they are presumed to have been rendered for free.

The trial court correctly observed that these cases address the rendering of services, not the advancing of funds. There was no evidence in this case that the appellant rendered services for Mrs. Cole and was seeking payment for services. Accordingly, the cases are not applicable to the case at bar.

■ The trial court also correctly concluded that even if the principles established in these cases are extended to apply to the advancing of funds (which we do not), there still is no evidentiary presumption, in favor of a non-family member, that the decedent agreed to repay the advanced funds. We agree with the trial court that the existence of a presumption that services rendered, or funds advanced, to a decedent by family members are gifts does not logically give rise to a corresponding presumption that when non-family members render services or advance funds to a decedent, they do so upon an agreement by the decedent to pay for the services or repay the advanced funds, as the case may be. Indeed, as we shall explain, such a *presumption* is inconsistent with the principle stated in *Bantz v. Bantz, supra,* that it is permissible to draw an *inference* from the fact that services were rendered (or monies advanced) to a decedent during his or her lifetime that the decedent agreed to pay for the services (or repay the advanced sums).

■ In a civil case, an evidentiary presumption will satisfy the favored party's burden of production on the issue to which the presumption applies, and will shift to the opposing party the burden to produce evidence to rebut the presumed fact. "If that party introduces evidence tending to disprove the presumed fact, the presumption will retain the effect of creating a question to be decided by the trier of fact unless the court concludes that such evidence is legally insufficient or is so conclusive that it rebuts the presumption as a matter of law." Md. Rule 5–301(a). "[P]resumptions do not affect the burden of persuasion. A presumption merely satisfies the burden of production on the fact presumed and, in the absence of rebutting evidence, may satisfy the burden of persuasion." *Carrion v. Linzey,* 342 Md. 266, 279, 675 A.2d 527 (1996)(quoting Alan D. Hornstein, *The New Maryland Rules of Evidence: Survey, Analysis and Critique,* 54 Md. L.Rev. 1032, 1049 (1995)).

■ The practical effect of the presumption that services rendered to a decedent by a family member are rendered without expectation or promise of payment is to prohibit, not permit, the drawing of an inference of a promise to pay from the rendering of services in claims by family members against decedents' estates. In claims by non-family members, however, the inference of a promise to pay is permitted. A non-family member claimant can meet his burden of production on the issue of whether the decedent made an agreement to pay by presenting proof of the rendering of services (or, if the presumption were to be extended, of the advancing of sums).

■ This permissible inference does *not* shift the burden to the decedent's estate to present evidence to rebut the fact of a promise to pay. Unlike a presumption, which has the effect of shifting the burden of production on the presumed fact to the opposing party, a permissible inference "has the effect only of meeting the proponent's burden of production but not shifting that burden to the opposing party,...." *McQuay v. Schertle,* 126 Md.App. 556, 592, 730 A.2d 714 (1999)(quoting Reporter's Note to Rule 5–301(a)). Thus, the

existence of a presumption that family members do not render services (or advance funds) upon a promise of payment means, at most, that in the case of a non-family member, a permissible inference of a promise to pay may be drawn from the rendering of services (or advancing of funds). It does not mean that there is a presumption of a promise of payment.

█ In the case at bar, the trial court explained that even factoring out the issue of competency, there was little reason to conclude from Mrs. Cole's conduct in accepting the appellant's "advancement" of monies, that Mrs. Cole had agreed to repay the appellant the sums advanced. Mrs. Cole had substantial assets. Indeed, the value of her Estate ultimately was determined to be close to $2 million dollars. Many of her assets were liquid, including substantial sums in bank accounts. When the two women visited Mr. Arch, Mrs. Cole still had access to her accounts and could have written a check. There was no financial need, therefore, for the appellant to advance money to Mrs. Cole, or on her behalf.

Moreover, as the trial court explained, there was evidence that the appellant took Mrs. Cole to Mr. Arch to have Mrs. Cole revise her 1990 Will so as to name the appellant as her Personal Representative. That change, given the size of Mrs. Cole's Estate, would have worked to the appellant's financial benefit. In addition, the new Will contained a significant additional bequest to the appellant of 20% of Mrs. Cole's residuary estate. If the new Will stood up to challenge, the appellant would have received a tremendous monetary benefit, far in excess of the sums she paid to Mr. Arch and Dr. Epstein. Thus, the evidence showed that the appellant had a strong incentive to pay the sums to Mr. Arch and Dr. Epstein without any promise, express or implied, of repayment by Mrs. Cole, because the appellant stood to gain from Mr. Arch's legal representation of Mrs. Cole, including Mr. Arch's assertion of competency through evidence provided by Dr. Epstein.

In short, the trial court, having rendered the retainer agreement a nullity, reasonably could conclude from the facts

surrounding the appellant's payment of fees to Mr. Arch and Dr. Epstein, as testified to by the appellant and by Mr. Arch, that Mrs. Cole did not agree to repay the sums the appellant paid to Mr. Arch and Dr. Epstein.

## II.

As noted above, the trial court also concluded that even if it were to find that the evidence of the appellant's payments to Mr. Arch and Dr. Epstein, and of the reference to reimbursement in Mr. Arch's retainer agreement, favored a finding that Mrs. Cole indeed had agreed, expressly or impliedly, to repay the appellant, that evidence was negated by the judicially determined fact, in the 1996 competency case, of Mrs. Cole's mental incompetency and lack of capacity to enter into a contract at the relevant time. In other words, it appears that the court applied the doctrine of collateral estoppel at trial, ruling that the issue of Mrs. Cole's mental competency in early 1996, the time frame relevant to this case, was conclusively established in the competency case. As an alternative ground, the court ruled that the appellant's claim for repayment of Mr. Arch's fee was barred by the doctrine of *res judicata*.

The appellant initially contends the trial court erred as a matter of law in considering the defenses of collateral estoppel and *res judicata*, because they were not pleaded. On the merits, she argues that the trial court incorrectly applied the doctrines, because she was not a party to or in privity with a party to the competency case, as a matter of law.

Rule 2–323 provides that all defenses of law or fact to claims filed must be asserted in an answer. Subsection (g) enumerates various affirmative defenses, including collateral estoppel and *res judicata*, that must be "set forth by separate defenses." It is well-settled Maryland law that any of the listed affirmative defenses not included in the answer are deemed waived. *Liberty Mutual Insurance Co. v. Ben Lewis Plumbing, Heating & Air Conditioning, Inc.*, 121 Md.App. 467, 478, 710 A.2d 338 (1998), *aff'd*, 354 Md. 452, 731 A.2d 904 (1999);

*Gooch v. Maryland Mechanical Systems, Inc.,* 81 Md.App. 376, 385, 567 A.2d 954 (1990).

 Rule 8–131 governs the scope of appellate review in this Court. Subsection (a) states, "[o]rdinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court. . . ." In the case at bar, when the appellee raised the issues of *res judicata* and collateral estoppel at trial, despite not having pleaded them, the appellant responded on the merits, rather than asserting that the appellee had waived the defenses. Accordingly, the appellant did not preserve the waiver issue she seeks to raise on appeal, and we decline to address it. Instead, we shall turn to the merits of the appellant's *res judicata*/collateral estoppel contention.

 The doctrine of *res judicata,* also called claim preclusion, applies when the parties to a second suit are the same or in privity with the parties to a first suit; the first and second suits present the same claim or cause of action; and there was a final judgment rendered on the merits in the first suit, by a court of competent jurisdiction. *FWB Bank v. Richman,* 354 Md. 472, 492, 731 A.2d 916 (1999) (citing *deLeon v. Slear,* 328 Md. 569, 580, 616 A.2d 380 (1992)); *Poteet v. Sauter,* 136 Md.App. 383, 411, 766 A.2d 150 (2001). When those three elements have been satisfied, the first claim is merged into the judgment and bars the second claim.

 Claim preclusion is a judicially created doctrine that serves the objective of finality. When one party has had his claim against another party fully and fairly adjudicated on the merits by a court of competent jurisdiction, the doctrine of *res judicata* avoids " 'the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibilities of inconsistent decisions.' " *Poteet v. Sauter,* supra, 136 Md.App. at 411, 766 A.2d 150 (quoting *Murray International Freight Corp. v. Graham,* 315 Md. 543, 547, 555 A.2d 502 (1989)(quoting *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 59

L.Ed.2d 210 (1979))). *See Maryland State Dep't of Education v. Shoop,* 119 Md.App. 181, 200, 704 A.2d 499 (1998).

In *Kent County Board of Education v. Bilbrough,* 309 Md. 487, 499–500, 525 A.2d 232 (1987), the Court of Appeals held that for purposes of *res judicata,* whether claims are the same is to be determined by the "transaction test," as set forth in section 24 of the *Restatement (Second) of Judgments.* Under the transaction test, a "claim" includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the claim arose. *FWB Bank v. Richman, supra,* 354 Md. at 493, 731 A.2d 916. Therefore, when the claim is extinguished, all such rights of the plaintiff to such remedies are extinguished as well. *Id. See also Patel v. HealthPlus, Inc.,* 112 Md.App. 251, 282–83, 684 A.2d 904 (1996).

Under the transaction test, what factual grouping constitutes a "transaction" and what groupings constitute a series of connected "transactions" are to be determined "pragmatically, giving weight to such considerations as whether facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Kent County Board of Education v. Bilbrough, supra,* 309 Md. at 498, 525 A.2d 232 (quoting *Restatement (Second) of Judgments* § 24). *See also FWB Bank v. Richman, supra,* 354 Md. at 493, 731 A.2d 916.

Because a "claim" encompasses all rights the plaintiff has to remedies against the defendant respecting all or any part of the transaction or series of connected transactions out of which the claim arises, the doctrine of *res judicata* bars subsequent litigation not only of what was decided in the original litigation of the claim but also of what *could have been decided* in that original litigation. *Gertz v. Anne Arundel County,* 339 Md. 261, 269, 661 A.2d 1157 (1995). As the Court of Appeals explained in *Alvey v. Alvey,*

a judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action, and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit.

225 Md. 386, 390, 171 A.2d 92 (1961). *See also Colandrea v. Wilde Lake Community Ass'n, Inc.,* 361 Md. 371, 388, 761 A.2d 899 (2000); *Rowland v. Harrison,* 320 Md. 223, 229, 577 A.2d 51 (1990); *Wolfe v. Anne Arundel County,* 135 Md.App. 1, 27–28, 761 A.2d 935 (2000), *cert. granted,* 363 Md. 205, 768 A.2d 54 (2001).

Under the doctrine of collateral estoppel, otherwise known as issue preclusion, a determination of fact that was actually litigated in a first suit between parties is conclusive in a second suit, on a different cause of action, between the same parties or their privies. *MPC, Inc. v. Kenny,* 279 Md. 29, 32, 367 A.2d 486 (1977).

The Court of Appeals has explained the concept of privity in this setting as follows:

[F]or the purpose of the application of the rule of *res judicata,* the term "parties" includes all persons who have a direct interest in the subject matter of the suit, and have a right to control the proceedings, make defense, examine the witnesses, and appeal if an appeal lies.... So, where persons, although not formal parties of record, have a direct interest in the suit, and in the advancement of their interest[,] take open and substantial control of its prosecution, or they are so far represented by another that their interests receive actual and efficient protection, any judgment recovered therein is conclusive upon them to the same extent as if they had been formal parties.

*Ugast v. LaFontaine,* 189 Md. 227, 232–33, 55 A.2d 705 (1947) (citations omitted). *See Warner v. German,* 100 Md.App. 512, 519, 642 A.2d 239 (1994).

In *Warner,* Judge Harrell, writing for this Court, explained that the cases analyzing the concept of privity in the context of the doctrines of *res judicata* and collateral estoppel have

focused on the procedural rights of the party against whom the doctrine is being used:

> In discerning whether a party's procedural rights have been addressed adequately, a court may focus on the nature of the interests binding the two parties, and, correspondingly, whether they share the same incentive in their separate litigation attempts.... This priority is reflected in the requirement of collateral estoppel that a second party cannot be covered by a previous decision unless he or she had an appropriate opportunity to appeal the first decision.

*Warner v. German, supra,* 100 Md.App. at 521, 642 A.2d 239 (citations omitted).

As the preceding discussion makes plain, an essential element of the doctrines of collateral estoppel and *res judicata* is that the parties to the second suit be the same or in privity with the parties to the first suit. Whether parties are the same or are in privity with a party is a question of law. *Douglas v. First Security Federal Savings Bank, Inc.,* 101 Md.App. 170, 180, 643 A.2d 920 (1994).

In its ruling in this case, the trial court concluded that the appellant was in privity with a party in the competency case. When we examine the role the appellant played in the competency case, her relationship with the parties to that case, and what procedural rights, if any, she had with respect to that case, we conclude otherwise.

The appellant was not a party to the competency case. Mr. Arch, the person with whom the court ruled she was in privity, also was not a party to that case. He represented Mrs. Cole, and after the court ruled that a guardian was to be appointed, asked that the court direct the guardian to pay his fee out of the guardianship estate. Even if he could be viewed as a party, to the extent that he was asserting a claim for payment of his fees, the appellant had no procedural rights *vis a vis* that claim. She could not assert it herself, could not advocate to the court that it be paid, could not present evidence as to why her advancement of a portion of the fee on behalf of Mrs. Cole in particular should have been paid, and could not appeal

from the court's decision that Mrs. Cole's guardianship estate should not pay the fee because Mrs. Cole had been incompetent to agree to pay it.

To be sure, the sum paid by the appellant to Mr. Arch for his fee and for Dr. Epstein's fee is a portion of the fee that Mr. Arch was seeking to be paid in the competency case. The appellant therefore had an interest in Mr. Arch's successfully recovering his fee in the competency case, because had he done so, he would have reimbursed her for the portion of the fee she had advanced. Nevertheless, for purposes of *res judicata* and collateral estoppel, the appellant did not have either the right or ability to participate in the competency case that would justify her being bound by the proceedings, or would make the factual determinations in the proceeding conclusive upon her in a later related proceeding. Moreover, she could not appeal.

■ The appellant's claim in this case was not barred by the doctrine of *res judicata*. In addition, the doctrine of collateral estoppel did not apply so as to make the factual finding of mental incompetence of Mrs. Cole in early 1996 conclusive in the case at bar. That does not mean, however, that that finding was of no consequence to this case. *Ritter v. Ritter*, 114 Md.App. 99, 689 A.2d 101 (1997), is informative on this point.

In *Ritter*, a sister and brother were involved in litigation over the medical and personal affairs of their elderly father. Among other things, they disputed their father's competency and whether he had had the mental capacity, in early 1993, to revoke his previously given powers of attorney and execute new ones. The circuit court held an evidentiary hearing and found that from December 1992 forward, the father had been mentally incompetent to handle his own affairs, and therefore any instrument executed by him after that date was legally ineffective.

The father had executed a will in September 1992, and then executed another will in July 1993. When he died, in November 1993, the siblings and the estate filed caveat proceedings

in the orphans' court challenging the father's testamentary capacity to make the July 1993 will. The orphans' court granted summary judgment on the ground of collateral estoppel, ruling that the factual finding in the prior litigation that the father was mentally incompetent from December 1992 forward was conclusive in the caveat proceeding, and established that he did not have testamentary capacity to make the July 1993 will.

On appeal, we reversed the grant of summary judgment. We held that the issue litigated in the guardianship case, whether the father's competency to execute powers of attorney in early 1993, was not the same issue as whether he had had testamentary capacity to make a will in July 1993, the issue in the caveat case. In so holding, we quoted with approval this excerpt from the North Carolina case of *Will of Maynard:*

> Where a person has been adjudged incompetent from want of understanding to manage his affairs, by reason of physical and mental weakness . . ., and the court has appointed a guardian, and not a trustee, the ward is conclusively presumed to lack mental capacity to manage his affairs, *insofar as parties and privies to the guardianship proceedings are concerned;* and, while not conclusive as to others, it is presumptive proof of the mental incapacity of the ward, and this presumption continues unless rebutted in a proper proceeding.

114 Md.App. at 107, 689 A.2d 101 (quoting *Will of Maynard,* 64 N.C.App. 211, 225 307 S.E.2d 416, 426 (1983) (in turn citing *Sutton v. Sutton,* 222 N.C. 274, 277, 22 S.E.2d 553, 555 (1942) (emphasis added))). We went on to explain that a finding of incompetency to manage one's affairs in a guardianship proceeding does not in and of itself establish lack of testamentary capacity on the part of the ward; rather, it is *prima facie* evidence of lack of testamentary capacity. In other words, it creates a rebuttable presumption of lack of testamentary capacity.

In the case at bar, the court was entitled to weigh the 1996 incompetency determination of Mrs. Cole as an item of evidence creating a rebuttable presumption that she lacked capacity to enter into an agreement, expressly or impliedly, to repay the appellant the sums the appellant was paying on her behalf. It appears from the written decision of the court, however, that it treated the factual issue of mental incompetency as having been conclusively established in the competency proceeding (*i.e.*, it applied the doctrine of collateral estoppel). Put another way, the court applied an irrebuttable presumption that Mrs. Cole was mentally incompetent on the pertinent dates in early 1996. On that basis, the court concluded that irrespective of the evidence presented by the appellant, Mrs. Cole could not have entered into a valid agreement, express or implied, to repay the appellant.

As our discussion in Part I makes clear, the trial court reasonably could have found from the evidence presented that the appellant did not sustain her burden of proving that an agreement to pay was made; and it further could have found that the evidence adduced by the appellant was not sufficient to rebut the presumption of incompetency resulting from the 1996 competency case. The court did not analyze the case in that fashion, however. Instead, it seems to have applied a conclusive presumption that Mrs. Cole was incompetent to enter into any agreement at the times relevant to this case. For the reasons we have explained, a conclusive presumption should not have been applied. Accordingly, we shall vacate the judgment and remand the case to the circuit court for further proceedings not inconsistent with this opinion.

### III.

We will address the next issue for guidance on remand. The appellant contends the trial court erred in ruling the checks she wrote to Mr. Arch and Dr. Epstein inadmissible under Md.Code (1998 Repl.Vol., 2001 Supp.), section 9–116 of the Courts & Judicial Proceedings Article ("CJ"), commonly called the "dead man's statute." As will be discussed below, the trial court did not characterize the checks themselves as a

"transaction with" Mrs. Cole within the meaning of that statute. Rather, it concluded that the dead man's statute operated to prevent the appellant from testifying about her January 3, 1996 meeting with Mrs. Cole and Mr. Arch, during which the appellant gave at least one check to Mr. Arch, and the limitation on the appellant's testimony imposed by the dead man's statute in turn rendered the appellant unable to demonstrate the relevance of the checks.

The dead man's statute provides:

A party to a proceeding by or against a personal representative, heir, devisee, distributee, or legatee as such, in which a judgment or decree may be rendered for or against them, or by or against an incompetent person, may not testify concerning any transaction with or statement made by the dead or incompetent person, personally or through an agent since dead, unless called to testify by the opposite party, or unless the testimony of the dead or incompetent person has been given already in evidence in the same proceeding concerning the same transaction or statement.

CJ § 9–116.

In *Reddy v. Mody*, 39 Md.App. 675, 388 A.2d 555 (1978), this Court explained, "[t]he general purpose of the Statute is to equalize the position of the parties by imposing silence on the survivors as to transactions with or statements by the decedent...." *Id.*, 39 Md.App. at 679, 388 A.2d 555. The dead man's statute has been narrowly construed by Maryland courts, in an effort to admit as much evidence as possible under the rule. *Farah v. Stout*, 112 Md.App. 106, 114, 684 A.2d 471 (1996) (citing *Reddy v. Mody, supra,* 39 Md.App. at 681–82, 388 A.2d 555); *Walton v. Davy,* 86 Md. App. 275, 285, 586 A.2d 760 (1991). The test for determining whether there has been a "transaction" within the meaning of the dead man's statute is " '[w]hether, in case the witness testify falsely, the deceased, if living, could contradict it *of his own knowledge.*' " *Schifanelli v. Wallace*, 271 Md. 177, 184, 315 A.2d 513 (1974) (emphasis in *Schifanelli* )(quoting *Ridgley v. Beatty,* 222 Md. 76, 83, 159 A.2d 651 (1960)).

In the case at bar, the meeting between Mr. Arch, Mrs. Cole, and the appellant in Mr. Arch's office, during which the retainer agreement was signed and the appellant wrote Mr. Arch a check for $1000, constituted a "transaction with" Mrs. Cole under the dead man's statute. The appellant maintains she was not a party to the transaction because the transaction was solely between Mr. Arch and Mrs. Cole. Admittedly, the professional relationship being established at the meeting was between Mr. Arch and Mrs. Cole, and did not include the appellant. The term "transaction" as used in the dead man's statute, however, has a broader meaning than it might in other situations. Mrs. Cole, if alive, could, based on personal knowledge, contradict the appellant's testimony on the issue of reimbursement of the legal fees. Accordingly, the meeting was a "transaction with" the decedent, and the trial court properly precluded the appellant's testimony on the matter.

The dead man's statute expressly prohibited the appellant from testifying about anything Mrs. Cole may have said to indicate her intention to reimburse the appellant.

Further, the appellant could not testify that she paid Mrs. Cole's legal fees because she "understood" that she would be reimbursed at some point in the future. This Court, in *Farah v. Stout, supra,* when faced with a similar factual situation, explained: "The distinction between the clearly prohibited statement—'Mr. Sanderson [the decedent] contracted with me'—and the proffered one—'I [claimant] cared for Mrs. Sanderson [the decedent's wife] because I expected to be paid'—is not discernable for purposes of the dead man's statute when the only basis of the expectation of payment was an agreement by Mr. Sanderson to make the payment." *Farah v. Stout, supra,* 112 Md.App. at 114–15, 684 A.2d 471.

The appellant's reliance on *Ridgley v. Beatty, supra,* to support the argument that the trial court erred in excluding the checks is misplaced. In *Ridgley,* the executor claimed that the trial court erred in allowing testimony by the claimant concerning checks the claimant had written to third parties

during the time the claimant was living with the decedent. The executor contended that the dead man's statute barred such testimony, but the Court of Appeals disagreed. *Ridgley v. Beatty, supra,* 222 Md. at 83, 159 A.2d 651. Significantly, however, the testimony that the Court concluded was admissible was quite limited: "The [trial] court permitted the claimant to identify each check, describe it and to state the item for which the check was given, but it would not permit him to connect such payments with any 'agreement or understanding or transaction' the claimant had with the decedent." *Id.* at 81, 159 A.2d 651. In the instant case, the trial court likewise permitted the appellant to testify about the dollar amounts of the various checks, as well as to whom each check was written.

The reason the trial court ruled the checks inadmissible is they were being offered by the appellant not to show that she had paid particular sums of money to Mr. Arch and Dr. Epstein but to show that the payments were made pursuant to an underlying agreement by Mrs. Cole to reimburse her. Indeed, the appellant had written notations on the checks that the payments were "loans" to Mrs. Cole. To the extent the checks were being offered for that purpose, they were evidence precluded by the dead man's statute, and were otherwise not relevant. To the extent the checks were being offered merely to establish that payments were made (which clearly was not the case), they were duplicative, as the appellant had already so testified.

### IV.

In closing argument in the orphans' court, the appellee, at that time representing himself, stated, "I will abide by whatever Order of the Court." The appellant contends that by that statement, the appellee evidenced an intention to adhere to the orphans' court's decision and not to exercise his right to appeal, and therefore waived the right to appeal. This argument was addressed by both parties in the circuit court, but was not mentioned by the trial court in its opinion and order. We shall presume that by allowing the case to proceed, the circuit court implicitly rejected the argument.

██ "The general rule in this State is that 'an appellant cannot take the inconsistent position of accepting the benefits of a judgment and then challenge its validity on appeal.'" *Downtown Brewing Company, Inc. v. Mayor and City Council of Ocean City, Maryland,* 370 Md. 145, 149, 803 A.2d 545 (quoting *Shapiro v. Md.—Nat. Park Comm.,* 235 Md. 420, 424, 201 A.2d 804 (1964)). *See also Osztreicher v. Juanteguy,* 338 Md. 528, 534, 659 A.2d 1278 (1995) (explaining "[i]t is well settled in Maryland that 'the right to appeal may be lost by acquiescence in, or recognition of, the validity of the decision below from which the appeal is taken or by otherwise taking a position which is inconsistent with the right of appeal'") (quoting *Rocks v. Brosius,* 241 Md. 612, 630, 217 A.2d 531 (1966)).

 In other words, "a voluntary act of a party which is inconsistent with the assignment of errors on appeal normally precludes that party from obtaining appellate review." *Franzen v. Dubinok,* 290 Md. 65, 69, 427 A.2d 1002 (1981). This rule, often called "the acquiescence rule," *Downtown Brewing Company, Inc. v. Mayor and City Council of Ocean City, supra,* 370 Md. at 145, 803 A.2d 545, has been applied to bar appeals, for example, (1) of consent decrees, (2) from a party who accepts the benefits of a judgment while simultaneously challenging its validity, (3) by a party against whom an adverse judgment was entered by the trial court after the party failed to present evidence on which that party had the burden of proof, and (4) when a party has consented to remittitur to avoid a new trial. *See Dietz v. Dietz,* 351 Md. 683, 689–97, 720 A.2d 298 (1998); *Franzen v. Dubinok, supra,* 290 Md. at 68–69, 427 A.2d 1002; *Osztreicher v. Juanteguy, supra,* 338 Md. at 534–35, 659 A.2d 1278. Because the acquiescence rule is severe, it is narrowly applied only to actions by the same litigant that are "necessarily inconsistent" with challenging the validity of a judgment on appeal. *Downtown Brewing Company, Inc. v. Mayor & City Council of Ocean City, supra,* 370 Md. at 145, 803 A.2d 545.

In all the cases applying the acquiescence rule to bar an appeal, the conduct constituting acquiescence was a party's post-judgment voluntary acceptance of the benefits of the judgment. There are no Maryland cases holding that conduct of a party prior to entry of judgment, short of consent to the judgment, constituted acquiescence in the judgment that barred the right to appeal. The reason for this is that, given the limited application of the rule, post-judgment conduct by a party not constituting consent to entry of judgment will not be "necessarily inconsistent" with a challenge to the judgment once entered. To take actions that are necessarily inconsistent with challenging a judgment, a party must have knowledge of the nature and effect of the judgment. Indeed, the rule also is referred to as the "general waiver rule," implying a knowing relinquishment of rights. *See Dietz v. Dietz, supra,* 351 Md. at 688, 720 A.2d 298. Unless the judgment is by consent, the party ordinarily will not have the knowledge necessary to acquiesce in the judgment until the judgment has been rendered.

In the case at bar, the appellee's comment in closing argument before the orphans' court, made prior to the decision of that court and without knowledge of what the decision would be, was not an acquiescence in the court's later judgment. Accordingly, the appellee did not waive his right to appeal the judgment of the orphans' court.

## V.

Finally, the appellant presents two arguments concerning the statute of limitations. First, she contends that the circuit court erred in considering the issue of limitations because the appellee waived the defense by failing to plead it in answer to the complaint. The appellant also maintains that her alleged agreement with Mrs. Cole was similar to a demand note, meaning that the three-year statute of limitations did not begin to run until her demand for payment was refused by the appellee, on behalf of the Estate.

As discussed *supra* in section II, by not raising the issue of waiver of an affirmative defense in the trial court, the appellant failed to preserve it for review. Md. Rule 8–131(a). *See also Heineman v. Bright*, 140 Md.App. 658, 671, 782 A.2d 365 (2001), *cert. denied*, 367 Md. 723, 790 A.2d 673 (2002) (explaining that, "[u]nder Maryland Rule 8–131(a), this Court ordinarily will not decide any non-jurisdictional issue unless the issue plainly appears by the record to have been raised in or decided by the trial court"). We therefore will not address the question of whether the appellee waived his right to raise the affirmative defense of limitations.

CJ section 5–101 provides that, "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." In order to decide whether the statute of limitations on the appellant's claim expired, before suit was filed, we must determine the date on which her cause of action accrued.

The appellant maintains that the agreement she supposedly made was for Mrs. Cole to repay her the advanced sums at some time in the future. In other words, Mrs. Cole's payment obligation under the alleged agreement only would arise once a demand for payment was made. Therefore, the agreement only could be breached when payment was refused after demand. The appellant contends she did not make a demand for payment until after Mrs. Cole died, when she filed a claim with the Estate. Accordingly, upon the Estate's denial of her claim for repayment, the agreement was breached, and her cause of action accrued. The appellant's claim was disallowed by the appellee as Personal Representative of the Estate on February 4, 2000. Thus, in the appellant's view, her cause of action accrued on that date; and because her suit was filed within three years of that date, it was not time-barred.

The trial court rejected the appellant's argument. Emphasizing that the checks were written between January and April of 1996, and the appellant did not file her claim seeking repayment by the Estate until September 28, 1999, the court

ruled that the appellant's claim was barred by the three-year statute of limitations. The trial court's ruling suggests that it concluded that the appellant's cause of action accrued on the dates the checks were written, and not on the date demand for payment was made.

In Maryland, demand notes are payable on the date executed, without demand. *Waller v. Maryland National Bank,* 95 Md.App. 197, 213, 620 A.2d 381 (1993), *vacated on other grounds,* 332 Md. 375, 631 A.2d 447 (1993). Concerning statutes of limitations, prior to enactment of the revised Title 3 of the Commercial Law Article, the rule was that because time begins to run on the date payment is due, time on demand notes begins to run immediately upon delivery. *Jenkins v. Karlton,* 329 Md. 510, 517, 620 A.2d 894 (1993); *Blick v. Cockins,* 131 Md. 625, 630–31, 102 A. 1022 (1917). This rule was codified in prior section 3–122 of the Commercial Law Article, but the revised Title 3, enacted in 1996, omitted it.[3] The rule is generally applicable to demand notes in many jurisdictions, but exceptions arise when it is clear from the note that the parties did not intend for the note to be payable immediately. J.A. Bock, *Annotation, When Statute of Limitations Begins to Run Against Note Payable on Demand,* 71 A.L.R.2d 284 (1960, 2002 Supp.).

While the alleged agreement in the case *sub judice* is similar to a demand note, it is not actually a demand note because it lacks elements necessary to render it a negotiable instrument. Md.Code, Comm. Law, § 3–104 (2002 Repl.Vol.)(incorporating the definition of an "order" and a "promise" contained in section 3–103(a)). The statute of limi-

---

**3.** The Official Comment to Commercial Law, section 3–118, entitled "Statute of limitations" explains that, "[s]ection 3–118 differs from former Section 3–122, which states when a cause of action accrues on an instrument. Section 3–118 does not define when a cause of action accrues." It is unclear whether the rule contained in former section 3–122, is currently applicable to demand notes in Maryland. The resolution of this issue, however, is not necessary in the instant case and we therefore decline to address it further.

tations applicable to demand notes, therefore, does not resolve the case *sub judice.*

We turn then to basic contract law. In Maryland, a cause of action for breach of contract accrues when the contract is breached, and when "the breach was or should have been discovered." *Jones v. Hyatt Insurance Agency, Inc.,* 356 Md. 639, 648, 741 A.2d 1099 (1999). *See also Poffenberger v. Risser,* 290 Md. 631, 636, 431 A.2d 677 (1981)(extending the applicability of the discovery rule in the context of statutes of limitations to all causes of actions). The accrual date in any given case is left to judicial determination, and may be a question of law, a question of fact, or a mixed question of law and fact. *Frederick Road Limited Partnership v. Brown & Sturm,* 360 Md. 76, 95, 756 A.2d 963 (2000); *Poffenberger v. Risser, supra,* 290 Md. at 634, 431 A.2d 677.

Neither party disputes that the checks in question were written in early 1996, that Mrs. Cole did not repay the appellant prior to her death, that the appellant filed a claim with the Estate for repayment on September 28, 1999, and that the appellant's claim was disallowed on February 4, 2000. If there indeed was an oral contract between the appellant and Mrs. Cole for Mrs. Cole to reimburse the appellant at some point in the future, upon demand, that agreement was not breached until the appellant's demand for payment was refused. The appellant was sent notice of the disallowance of her claim, so even under the discovery rule, her cause of action accrued on or about February 4, 2000.[4] Accordingly, if the agreement the appellant maintains was made in fact was made, limitations would not expire until three years after that accrual date. On those facts, the appellant's cause of action on the alleged oral agreement with Mrs. Cole was not time-barred, and her claim against the Estate based on that cause of action likewise was not barred by limitations. Therefore,

---

4. The accrual date might be a few days after February 4, 2000, depending on when appellant actually received notice of the disallowance of her claim.

the trial court was incorrect in ruling that the appellant's claim was time-barred, as a matter of law.

 JUDGMENT OF THE CIRCUIT COURT FOR CAL-VERT COUNTY VACATED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS NOT IN-CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEE.